**SEALED**

**ORIGINAL**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN - 7 2016

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. |
| v. | FILED UNDER SEAL |
| CELESTINE OKWILAGWE (01) a.k.a. TONY OKWILAGWE PAUL EMORDI (02) ADETUTU ETTI (03) | 3-16CR0240-B |

## INDICTMENT

The Grand Jury charges:

At all times material to this indictment:

### General Allegations

### The Medicare Program (Generally)

1.    The Medicare Program (Medicare) was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services (HHS), through its agency, the Centers for Medicare and Medicaid Services (CMS). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2.    Medicare was a "health care benefit program" as defined by 18 U.S.C. § 24(b).

3.    Physicians, clinics, and other healthcare providers that provided services to Medicare beneficiaries were able to apply for and obtain a Medicare "provider number."

Indictment – Page 1

A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

4.      Medicare required providers to accurately and truthfully complete a Medicare application to become providers.  The application required disclosure of parties with an "ownership interest and/or managing control" in the provider business to ensure those parties were not excluded from participating in the Medicare program.

5.      Medicare providers were required to certify that "neither this provider, nor any physician owner or investor or any other owner, partner, officer, director, managing employee, authorized official, or delegated official thereof is currently sanctioned, suspended, debarred, or excluded by the Medicare or State Health Care Program, e.g., Medicaid program, or any other Federal program, or is otherwise prohibited from supplying services to Medicare or other Federal program beneficiaries."  Medicare providers were also required to disclose any adverse legal history for all individuals and entities with an "ownership interest and/or managing control."  Medicare providers were required to update the application if this information changed.

6.      "Part A" of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency (HHA) to beneficiaries requiring home health services because of an illness or disability causing them to be homebound.  Payments for home healthcare medical services under Medicare Part A were typically made directly to an HHA or a provider based on claims submitted to the

Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries themselves.

7.     A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

### The Medicaid Program (Generally)

8.     The Medicaid Program (Medicaid) was implemented in 1967 under the provisions of Title 19 of the Social Security Act of 1965.  The State of Texas and the Federal government shared the cost of funding the Texas Medicaid Program.  The Medicaid program helped pay for reasonable and necessary medical procedures and services provided to individuals who were deemed eligible under state low-income programs.

9.     Medicaid was "a health care benefit program" as defined by 18 U.S.C. § 24(b).

10.    In order to receive reimbursement from Medicaid, a provider was required to truthfully and accurately submit an application and become an approved Medicaid provider.  If the provider met certain minimum qualifications, Medicaid approved the application and the provider was issued a unique identification number also known as a "provider number."  The provider was then allowed to submit claims to Medicaid for reimbursement for the cost of providing medically necessary services to Medicaid beneficiaries.

11.     Medicaid required providers to disclose parties with an ownership interest and/or managing control in the provider business to ensure those parties were not excluded from participating in the Medicaid program.

12.     Personal Assistance Services ("PAS") were a Medicaid benefit that provided beneficiaries with services that aided in living independently. PAS included, among other things, bathing, housekeeping, meal preparation, and grocery shopping.

13.     To provide PAS, an agency was required to be licensed as a home and community support services agency by the Texas Department of Aging and Disability Services ("DADS"). DADS required agencies to submit an application, develop policies and procedures, and undergo monitoring audits every other year. Once licensed, DADS provided all agencies with a handbook which detailed the rules and regulations pertaining to PAS.

14.     DADS required providers to disclose parties with an ownership interest or control in the provider business, and to certify that no person associated with the provider had been convicted of a crime related to health care. Providers were required to provide immediate written notice to DADS upon learning that any information provided was incorrect or had changed.

15.     DADS required providers to certify that neither the provider nor its principals, including officers, directors, owners, partners, and persons having primarily management and supervisory responsibilities within the company, were presently excluded from participation in Medicare, Medicaid, or any Federal or state health care program.

16.     DADS required providers to conduct monthly checks of the Federal and state exclusion list websites to ensure that no employees were excluded from participating in a Federal health care program since the last monthly check.

### Exclusion Process for Federal Health Care Programs

17.     The Department of Health and Human Services, Office of Inspector General (HHS-OIG) was required to exclude providers from Medicare, Medicaid, and all Federal health care programs upon the conviction of a health care offense.   A conviction included both a plea of guilty and the receipt of a deferred sentence.

18.     Exclusion prohibited the payment by any Federal health care program, including Medicare and Medicaid, for any items or services the excluded person furnished, ordered, or prescribed in any capacity and further prohibited employment in any capacity from providing any items or services which were billed to a Federal health care program. Such items included administrative, clerical, and other activities that did not directly involve patient care or the provision of any health care related services.

19.     The minimum period of exclusion was at least 5 years. Reinstatement was not automatic.  An excluded provider was required to reapply to the Medicare and Medicaid programs for reinstatement after the period of exclusion.

### Elder Care Home Health Services, LLC

20.     Elder Care Home Health Services, LLC (Elder Care) was a Texas limited liability company doing business at 6523C Duck Creek Drive, Garland, Texas and incorporated on April 16, 2001.  Elder Care initially applied to become a Medicare Provider on April

16, 2001. Elder Care submitted claims to Medicare and Medicaid for home health services and PAS.

21.     From in or about January 2013 to in or about May 2016, the exact dates being unknown to the Grand Jury, Elder Care received payments from Medicare and Medicaid for claims Elder Care submitted to Medicare and Medicaid into Wells Fargo bank accounts ending in 9280, 9574, and 2858. Defendant **Celestine Okwilagwe** was authorized to transact business on these bank accounts.

22.     From in or about January 2013 through in or about May 2016, the exact dates being unknown to the Grand Jury, Elder Care, which was owned and controlled by **Celestine Okwilagwe**, billed Medicare and Medicaid over $3.4 million for claim reimbursements to which it was not entitled.

### Defendants

23.     Defendant **Celestine Okwilagwe**, a resident of Dallas County, Texas, was an Administrator and Director of Elder Care.

24.     Defendant **Paul Emordi**, a resident of Dallas County, Texas, was an Administrator and the Supervisor of PAS providers for Elder Care.

25.     Defendant **Adetutu Etti**, a resident of Dallas County, Texas, was an Administrator and Registered Nurse for Elder Care.

### Defendants' Exclusion from Federal Health Care Programs

26.     On or about April 12, 2010, **Celestine Okwilagwe** and **Paul Emordi** were indicted for a felony offense associated with the delivery of a health care item or service

arising from their involvement with South Medical Supply and Equipment ("South Medical").

27.     On or about June 21, 2012, **Celestine Okwilagwe** and **Paul Emordi** pled guilty to a misdemeanor offense stemming from their April 12, 2010 indictment and received a deferred sentence.

28.     On or about January 3, 2013, HHS-OIG notified defendants **Celestine Okwilagwe** and **Paul Emordi** that they were excluded from participation in Medicare, Medicaid, and all Federal health care programs as defined in 1128B(f) of the Social Security Act for a period of 5 years.  HHS-OIG based defendants **Celestine Okwilagwe** and **Paul Emordi's** exclusions on their pleas of guilty to a criminal offense related to the delivery of an item or service under a Federal health care program, including Medicare or Medicaid.  This exclusion prohibited **Celestine Okwilagwe** and **Paul Emordi** from submitting or causing the submission of claims to, and receiving funds from, Federal health care programs such as Medicare and Medicaid, and further prohibited defendants **Celestine Okwilagwe** and **Paul Emordi** from furnishing, ordering, or prescribing any item or service, including administrative and managerial services that would be paid for, in whole or in part, by Medicare or Medicaid.

29.     On or about January 18, 2013, **Celestine Okwilagwe** and **Paul Emordi** appealed their respective exclusions from the Medicare and Medicaid programs.

30.     On or about March 27, 2013, an HHS Administrative Law Judge informed **Paul Emordi** that his appeal had been denied and his exclusion from participation in the Medicare and Medicaid programs for a period of 5 years was upheld.

31.     On or about September 6, 2013, an HHS Administrative Law Judge denied **Celestine Okwilagwe's** appeal and informed him that his exclusion from participation in the Medicare and Medicaid programs for a period of 5 years was upheld.

Count One

Conspiracy to Commit Health Care Fraud
(Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

32.    The Grand Jury re-alleges and incorporates by reference as if fully alleged herein

paragraphs 1 through 31 of the General Allegations of this indictment.

**The Conspiracy**

33.    From in or about April 2010 and continuing to in or about May 2016, the exact

dates being unknown to the Grand Jury, in the Dallas Division of the Northern District of

Texas and elsewhere, the defendants,

**Celestine Okwilagwe,
Paul Emordi,and
Adetutu Etti**

did knowingly, intentionally, and willfully combine, conspire, confederate, and agree

with each other and with other persons known and unknown to the Grand Jury, to commit

certain offenses against the United States, that is, to knowingly and willfully execute, and

attempt to execute, a scheme and artifice: (a) to defraud Medicare and Medicaid, both

health care benefit programs as defined in 18 U.S.C. § 24(b); and (b) to obtain money and

property owned by and under the custody and control of Medicare and Medicaid, both

health care benefit programs as defined in 18 U.S.C. § 24(b), by means of materially false

and fraudulent pretenses, representations, and promises, in connection with the delivery

of or payment for health care benefits, items and services, in violation of 18 U.S.C.

§ 1347.

## Object of the Conspiracy

34.    It was the object of the conspiracy for the defendants and others known and unknown to the Grand Jury to unlawfully enrich themselves, by concealing **Celestine Okwilagwe** and **Paul Emordi's** exclusion from participation in all Federal health care programs in order to submit claims to Medicare and Medicaid for reimbursement to which they were not entitled.

## Manner and Means of the Conspiracy

35.    The manner and means by which the defendants sought to accomplish the object of the conspiracy included, among other things:

## The Scheme to Defraud

36.    Defendants **Celestine Okwilagwe** and **Paul Emordi**, once excluded from the Medicare and Medicaid programs, would continue to bill Medicare and Medicaid by submitting and causing the submission of claims under a Medicare Provider Number registered to Elder Care.

37.    Defendant **Celestine Okwilagwe** would cause others, including defendant **Adetutu Etti**, to sign and submit a Medicare revalidation application for Elder Care which concealed and failed to disclose that defendants **Celestine Okwilagwe** and **Paul Emordi** had ownership interests and managerial roles in Elder Care.

38.    Defendant **Celestine Okwilagwe** would cause others, including defendant **Adetutu Etti**, to sign and submit a DADS contract reenrollment for Elder Care which concealed and failed to disclose that defendants **Celestine Okwilagwe** and **Paul Emordi**

had ownership interests and managerial roles in Elder Care, had been convicted of crimes related to health care, and had been excluded from all Federal health care programs.

39.     Defendant **Celestine Okwilagwe** would cause others, including defendant **Adetutu Etti**, to sign and submit a Molina Medicaid provider application which concealed and failed to disclose that **Celestine Okwilagwe** and **Paul Emordi** had ownership interests and managerial roles in Elder Care, had plead guilty to a legal action, and had been excluded from all Federal health care programs.

40.     Defendant **Celestine Okwilagwe** would cause others, including defendant **Adetutu Etti**, to sign and submit a Superior Health Plan Medicaid provider application which concealed and failed to disclose the exclusion of **Celestine Okwilagwe** and **Paul Emordi** from all Federal health care programs.

41.     Defendant **Celestine Okwilagwe** would fail to file Texas Franchise Tax Public Information Reports which otherwise would have reflected that defendant **Celestine Okwilagwe** was a Director and Administrator for Elder Care.

42.     Defendant **Celestine Okwilagwe** would cause others, including defendant **Adetutu Etti,** to file Texas Franchise Tax Public Information Reports which concealed and failed to disclose **Celestine Okwilagwe's** role in Elder Care

43.     Defendants **Celestine Okwilagwe** and **Paul Emordi**, in violation of their exclusions, submitted and caused to be submitted claims for reimbursement to Medicare and Medicaid.

44.     In violation of the terms of their exclusions, from January 2013 through the present, defendants **Celestine Okwilagwe** and **Paul Emordi**, caused the payment of Medicare and Medicaid funds to Elder Care for items or services, including administrative and managerial services, that defendants **Celestine Okwilagwe** and **Paul Emordi** furnished or ordered while serving as owners, employees, administrators and in other capacities at Elder Care in excess of approximately $3.4 million.

### Overt Acts

45.     In furtherance of the conspiracy, and to effect the objects thereof, the defendants each aiding and abetting each other and others known and unknown to the Grand Jury, performed and caused to be performed, among others, the overt acts as set forth below:

46.     On or about November 22, 2011, defendant **Adetutu Etti** signed and submitted a Medicare contract revalidation for Elder Care which concealed and failed to disclose that defendants **Celestine Okwilagwe** and **Paul Emordi** had ownership interests and managerial roles in Elder Care.

47.     On or about March 15, 2012, defendant **Celestine Okwilagwe** caused to be filed a Texas Franchise Tax Public Information Report for Elder Care which omitted defendant **Celestine Okwilagwe** as an officer, director, or member of Elder Care.

48.     On or about May 6, 2013, defendant **Adetutu Etti** signed and submitted a DADS contract reenrollment which falsely certified that no persons with an ownership interest or managerial role in Elder Care had been convicted of a crime relating to a federal health care program.

49.     On or about May 6, 2013, defendant **Adetutu Etti** signed and submitted a DADS contract renewal for Elder Care which falsely certified that none of the principals, including officers, directors, owners, partners, or person's having a primarily management and supervisory responsibility, in Elder Care were presently excluded from participation in the Medicare or Medicaid programs.

50.     On or about April 13, 2013, defendant **Celestine Okwilagwe** signed and filed a Texas Franchise Tax Public Information Report which listed **Celestine Okwilagwe** as an Administrator and Director of Elder Care.

51.     On or about May 2, 2014, defendant **Celestine Okwilagwe** caused to be filed a Texas Franchise Tax Public Information Report which listed defendant **Celestine Okwilagwe** as an Administrator and Director of Elder Care.

52.     On or about May 14, 2015, defendant **Celestine Okwilagwe** signed and filed a Texas Franchise Tax Public Information Report which listed **Celestine Okwilagwe** as a Director of Elder Care.

53.     On or about September 16, 2015, defendant **Celestine Okwilagwe** opened a business bank account ending in 9280 at Wells Fargo under the name of "Elder Care Home Health Services LLC."

54.     On or about September 16, 2015, defendant **Celestine Okwilagwe** indicated he was "self-employed" on an application for a business bank account ending in 9280 with Wells Fargo under the name of "Elder Care Home Health Services LLC."

55.     In or about October 2015, defendant **Adetutu Etti** signed and submitted a Molina Medicaid provider application for Elder Care which falsely certified that no employees of Elder Care had been or were currently excluded from participation in a government program such as Medicare or Medicaid.

56.     In or about October 2015, defendant **Adetutu Etti** signed and submitted a Molina Medicaid provider application for Elder Care which falsely certified that no representatives of Elder Care had ever pled guilty to any legal action.

57.     In or about October 2015, defendant **Adetutu Etti** signed and submitted a Molina Medicaid provider application for Elder Care which concealed and failed to disclose that defendants **Celestine Okwilagwe** and **Paul Emordi** had ownership interests and managerial roles in Elder Care.

58.     On or about February 23, 2016, defendant **Adetutu Etti** signed and submitted a Superior Health Plan Medicaid provider application that certified that Elder Care had not been excluded under its current or former name or business identity from any Federal or state health care program.

59.     Between on or about January 1, 2013 and the present, defendant **Celestine Okwilagwe** paid himself approximately $364,406 from Elder Care business bank accounts.

60.     Between on or about January 1, 2013 and the present, defendant **Celestine Okwilagwe** paid **Paul Emordi** approximately $77,039 from Elder Care business bank accounts.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347).

Forfeiture Notice

(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. 2461(c), upon conviction of the Count One offense, the defendants

**Celestine Okwilagwe,**
**Paul Emordi, and**
**Adetutu Etti**

shall forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to the Count One offense.

The property subject to forfeiture includes, but is not limited to gross proceeds in an amount of at least $3.4 million and the defendants are notified that upon conviction, a money judgment may be imposed equal to said amount.

Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), if any of the property described above, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty,

the United States intends to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL

FOREPERSON

JOHN R. PARKER
UNITED STATES ATTORNEY

ADRIENNE E. FRAZIOR
Assistant United States Attorney
Texas State Bar No. 24059546
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214.659.8600
Facsimile:   214.659.8805
Email:       adrienne.frazior@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

CELESTINE OKWILAGWE
aka TONY OKWILAGWE (1)
PAUL EMORDI (02)
ADETUTU ETTI (3)

SEALED INDICTMENT

18 U.S.C. § 1349
Conspiracy to Commit Health Care Fraud

18 U.S.C. § 982(a)(7) and (b)(1)
Forfeiture Notice

1 Count

A true bill rendered

---------------------------------------------------------------------------------

DALLAS                                                        FOREPERSON

Filed in open court this 7th day of June, 2016.

---------------------------------------------------------------------------------

                                                                      Clerk

**Warrant to be Issued**

---------------------------------------------------------------------------------

UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending